MARÍA PUIG, WIDOW OF JOSÉ P. CHANDRI, *pro se* and in the name of her minor children José and MARÍA CHANDRI PUIG, Plaintiffs and Appellants, *v.* RAMÓN SOTOMAYOR and his wife CONCEPCIÓN FLORES SOLÁ and JUAN SOLÁ GONZÁLEZ and his wife MANUELA FLORES SOLÁ, Defendants and Appellees.

No. 7711. Argued April 13, 1939.—Decided July 13, 1939.

*Francisco González Fagundo* and *José Puig Morales* for appellants. *Arturo Aponte* and *Faustino R. Aponte* for appellees.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This is a suit to collect a debt secured by mortgage. The complaint alleged that the defendant spouses Sotomayor-Flores, by public deed, on January 30, 1930, created a first mortgage in favor of the plaintiff's grantor, to secure a loan of two thousand dollars, upon a house in the city of Caguas, built upon a city lot, binding themselves to carry fire insurance thereon for the sum of four thousand dollars as long as the contract was in force;

That the debtors sold the mortgaged house to the codefendant Manuela Flores, accompanied by her husband the other defendant Juan Solá, for six thousand dollars, of which two thousand were retained by the purchaser to pay the mortgage;

That by public deed the defendant spouses Solá-Flores stated that Mrs. Claudina Valdés had loaned them on that day fifteen hundred dollars, to be returned on July 17, 1925, and to secure the debt they mortgaged the aforesaid house, binding themselves to insure the house and endorse the policy to the mortgagee, and they did so with the Royal Exchange Assurance Corporation and the National Fire Insurance Co.;

That in July 26, 1926, the house was almost totally destroyed by fire, being left in ruins, of insufficient value to compensate the debt, taking into account that the lot belongs to the city;

That the defendant spouses Solá Flores required the insurer companies to pay, and collected $1,114.64 from the first and $825.98 from the second; and that receipts for said amounts were signed by them together with their mortgagee Mrs. Valdés, and

That the defendants have not paid to the plaintiffs, who are the sole and universal heirs of the original mortgagee, Mr. Chandri, the debt or the interest thereon.

A judgment is prayed for, severally against the four defendants and that they be ordered to pay the two thousand dollars principal, plus interest, costs and attorney's fees; and that the remainder of the mortgaged property, or any right appertaining thereof, be sold, and if the proceeds is not enough, that the deficiency be recovered against other property of the defendants.

The defendant spouses Sotomayor Flores answered accepting the execution of the mortgage, explaining that all that was said in the deed about insurance was contained in paragraph five, which says:

"FIVE: The aforesaid house is insured against fire for the sum of four thousand dollars with the Great American Insurance Company, New York, Policy Number 10799, which policy the mortgagor leaves in possession of the mortgagee as additional security for the present loan, said mortgagor also binding himself to carry on at his expense the aforesaid insurance during the life of the loan, and the failure to perform this condition shall be a cause for the maturity of the mortgage and immediate foreclosure."

They also alleged that although the mortgaged house stood in their name, it really belonged to the codefendant spouses Solá-Flores, it being the latter who agreed to the loan with, and received the money from, Mr. Chandri's agent, Mr. Jiménez, all of which was known by the latter, who dealt with them directly, and that the transfer of the property that they made to the defendant spouses Solá-Flores was for the nominal price of six thousand dollars, to all of which Mr. Chandri's agent agreed.

As new matter they alleged that misunderstandings having arisen between the Solá-Flores couple, and so that the husband would not sell the house, they transferred it to their brother-in-law Sotomayor; and then the latter, at the request of Solá and his wife, who had covenanted with Jiménez (Chan-

dri's agent) the mortgage that the plaintiffs now try to collect, signed the deed by which it was created, receiving nothing; Jiménez having dealt with Solá directly for everything; both of them executing later the private document extending the mortgage.

The plaintiffs moved to strike out certain averments of the answer and all new matter and the court refused. After trial the case was decided by the following judgment:

"The case finally having been submitted to the court, when the deposition of the witness Juan Solá González was added to the record; the record having been examined, and the evidence offered during the trial having been carefully considered, it is unavoidable to conclude that neither defendant Ramón Sotomayor nor his wife Concepción Flores Solá have any true, legally created liability to the parties plaintiff, who, on the other hand, have obtained judgment against the true debtors, and judgment is hereby rendered dismissing the complaint as to the aforesaid defendant spouses Sotomayor–Flores; the parties plaintiff must pay to said defendant spouses the costs incurred by the same in this suit, including the amount, which the court considers reasonable, of $500 for attorney's fees."

Feeling aggrieved, the plaintiffs filed the present appeal. They charge six errors committed in their opinion by the lower court, 1, in overruling their motion to strike out certain averments of the answer: 2, in violating Sections 25 and 101 of the Law of Evidence; 3, in admitting in evidence a private document; 4, in admitting the statements of Mercedes and Ramón Sotomayor; 5, in dismissing the complaint, against the law and the evidence, and 6, in taxing costs to the plaintiffs, allowing five hundred dollars for attorney's fees.

Arguing their first assignment they point out that their complaint is sworn to, and invoke Section 110 of the Code of Civil Procedure, where it provides "if the complaint be verified, the denial of each allegation controverted must be specific, and be made positively, or according to the information and belief of the defendant."

Right after that they maintain that since the defendants accepted the execution of the mortgage, they are estopped from raising the other issues which appear in their answer, because, bound by the contract, no matter what relation existed between Sotomayor and Solá, although the agent Jiménez might have knowledge thereof, they could not prejudice the plaintiffs, heirs of Chandri, the debtor, who contracted with those who appeared as owners in the Registry, for which reason the motion to strike was in order. They cite Sections 25 and 101 of the Law of Evidence and the case of *Valdés* v. *Heirs of Gandía,* 41 P.R.R. 549.

In our opinion the lower court did not commit the assigned error. It is true that the defendants Sotomayor-Flores accepted in their answer the first paragraph of the complaint, that is, the one that refers to the execution of the mortgage in favor of the plaintiff's grantor, but it is also true that in the following averments they state facts which if true, are tantamount to a negation of the validity of the lien as against the aforesaid defendants.

"It is not essential that a traverse be expressed in negative words. On the contrary, an averment of a fact contrary to what is alleged in the complaint is equivalent to a denial. Accordingly, a defense alleging wrongful conversion of mortgage collateral must be construed as an express denial of a valid sale of the collateral. And an allegation that the relation of the parties was a cotenancy is an affirmative denial of an averment of partnership." 1 Bancroft's Code Pleading, Practice and Remedies, Ten Year Supplement, 1937, page 204.

We know the averments of the answer which have been attacked, through the abstract we have made and we have but to consider them in the light of the decisions of this Court in the cases of *Vilá* v. *Torres,* 1 S.P.R. 439, *Rosado* v. *Rosado,* 17 P.R.R. 447, *Horton* v. *Robert,* 11 P.R.R. 168, *Ribas* v. *Voight,* 1 S.P.R. 219 and *Pinto* v. *Heirs of Drew,* 45 P.R.R. 920, cited by the appellees, to conclude that they can be pleaded and that they constitute enough answer and defense to the

averments contained in the complaint against the defendant spouses Sotomayor-Flores.

A mortgage contract, simulated as to the person who is made to appear as owner of the mortgaged property, executed with the knowledge of and in agreement with the true owner and the mortgagee himself through an agent who appears in his name, lacks validity as against the simulated owner. It does have validity, if the transaction is real, against the property and its real owner.

And if this is so, then why should the simulation not be alleged in some way in the answer filed by the defendant, who is thereby freed from the liability which the plaintiff claims? In our judgment it is clear that it may be alleged.

▄ The second, third and fourth assignments of error are closely related to the first. In their discussion the appellants maintain that the court violated Sections 25 and 101 of the Law of Evidence—387 and 463 of the Code of Civil Procedure, 1933 ed.—because accepting the fact of the execution of the contract, and the certainty of the loan not having been attacked, nor fraud or illegality being alleged, there can be no alteration of the terms of the contract, and the presumption that all facts stated therein are true must subsist; and that thereby the court erred in admitting in evidence the private document about extension of the mortgage, executed by Jiménez as Chandri's agent and by Solá, and in allowing Mercedes Sotomayor and Ramón Sotomayor to testify, because both the document and the statements were inclined to vary the terms of the contract already admitted. They cite *Villanueva* v. *Suárez*, 41 P.R.R. 39; *Ramírez* v. *Pumares*, 28 P.R.R. 111; *López* v. *Lizardi*, 27 P.R.R. 691; *Nicorelli* v. *Ernesto López & Co.*, 26 P.R.R. 49; *Matson* v. *Goico*, 18 P.R.R. 678; *Bennett* v. *Boschetti*, 31 P.R.R. 809; *Commercial Bank* v. *Arguinzonis*, 35 P.R.R. 260; *Roig Commercial Bank* v. *Valladares*, 38 P.R.R. 393; *Cintrón & Aboy* v. *Solá*, 22 P.R.R. 245; *Crédito & Ahorro Ponceño* v. *Beiró*, 32 P.R.R. 752 and *National City Bank of N.Y.* v. *Martínez*, 41 P.R.R. 162.

What has been said as to the non-existence of the first error is basis to declare the second, third and fourth errors also not committed, because if the averments which the court refused to strike out were correctly alleged, then of course evidence thereon could and should have been admitted at the trial.

We have examined the decisions cited on their behalf in the appellant's brief to sustain their fifth assignment of error which is as follows:

"In discussing this error we have to begin from the errors one and two as a starting point, that is, that the averments af the answer should have been stricken out, and that even admitting that said averments were permissible and they remained as part of the answer, they are not enough to annul the right of the plaintiffs to collect the rest of the mortgage credit from Ramón Sotomayor, who was a several debtor.

"Admitting the statements of Mercedes Sotomayor and her father Ramón, said statements cannot have the scope which the trial judge gave them in rendering judgment, that is, that solely upon said proof Ramón Sotomayor and his wife Concepción Flores Solá are freed from liability, because to admit such a fact would be to destroy the probatory value of the public deeds.

"Ramón Sotomayor and his wife do not allege lack of capacity, nor have they alleged fraud, but that they as relatives of Juan Solá González agreed to sign the mortgage deed, received the check, endorsed it to Mr. Solá-González, and still on selling the mortgaged property to the latter ratified said contract when they referred to it as a lien and Solá González retained the amount of the debt. To allow such averments and give probatory value to such evidence would be a mockery of the most elementary principles of civil law.

"The judgment is contrary to the evidence because that presented, that is, the statements of two people whose name is Sotomayor, and that of Juan Solá González, cannot void a contract of loan secured by mortgage that appears by public deed, a solemn document that has all the legal requirements for validity, and also because the admission of the proof aforesaid violates the cited provisions of the Law of Evidence. We must remember that when the complaint was filed, Chandri had died; and that the statements of Sotomayor have

no value at all according to the provisions of the Law of Evidence, and the judgment aforesaid is contrary to law because of the aforesaid violations of law.''

It can be seen then, that they still are influenced by their strict construction of the law and their notion of the formality of a public document.

We have analyzed the evidence and it is convincing as to simulation.

From the mortgage deed itself it is evident that Jiménez had full powers to represent Chandri. It was he who arranged the loan in the name of his principal, who executed the document and received the rents from the true owner, to whom he granted an extension during which the fire occurred that destroyed nearly all the security.

And it was not only Sotomayor and his daughter Mercedes and the owner himself, Solá, who in a detailed, broad and convincing manner testified about the facts surrounding the transaction, and explained why the spouses Sotomayor appear as owners of the mortgaged property when they were not, and as mortgagors when they had not incurred in the debt, nor obtained benefit thereof, just delivering the amount of the loan to Solá when they received it from Jiménez; but also the notary himself, Andrés Mena Latorre, before whom the deed was executed, testified as follows:

"Q.—Mr. Mena, do you remember having executed a deed of mortgage, this deed of mortgage number 39 between Mr. Ramón Sotomayor Maymí and Mr. Fernando Jiménez acting as agent of Mr. José P. Chandri?

"A.—Yes sir.

"Q.—On January 30, 1933?

"A.—Yes sir.

"Q.—Who talked to you, what person called you and paid you the fees for that deed?

"A.—Mr. Juan Solá González.

"Q.—Please explain.

"A.—Mr. Juan Solá González came to my office in the morning and said: 'I have arranged a loan secured with mortgage with Mr. Fernando Jiménez, upon my dwelling house.' I then said: ''All right, then he must come around, he must drop in here for a couple of minutes' and indeed a short while later Mr. Fernando Jiménez came and gave me the data, he brought me the deed.

"Q.—What deed did he bring you?

"A.—The deed that was in the name of Ramón Sotomayor, I told Mr. Jiménez: 'Say, but this property is in the name of Mr. Ramón Sotomayor', he told me: 'But you know that property belongs to Mr. Juan Solá González.

. . . . . . . . . .

"Q.— . . . continue explaining.

"A.—All right, he supplied me, he gave me the data as to how the mortgage deed should be made, I made it and we went out to sign it.

"Q.—Excuse me a moment, that deed delivered to you was the one in Sotomayor's favor, that is, the one that Sotomayor had, in which his title to the property that was to be mortgaged was shown?

"A.—Yes sir, he appeared as the owner.

"Q.—Go on.

"A.—Well, the deed was made.

"Q.—The stipulation in the deed and the conditions, who gave them to you?

"A.—Mr. Fernando Jiménez, the term, interest and fire insurance, the condition about fire insurance. The deed was made, we went to execute it to the house of Mr. Ramón Sotomayor.

"Q.—Who went to the house of Mr. Ramón Sotomayor?

"A.—Mr. Fernando Jiménez, Mr. Juan Solá and myself, with the witnesses, the deed was read and before signing it Mr. Ramón Sotomayor said: 'That is yours, I have nothing to do with it.'

"Q.—To whom did he say it?

"A.—To Mr. Fernando Jiménez and Mr. Juan Solá González.

. . . . . . . . . .

"Q.—Do you mean that Sotomayor told Solá that that was his?

"A.—That it was his.

"Q.—And Jiménez answered him, said anything?

"A.—No sir, he said nothing.

"Q.—Were you also present when Jiménez delivered the check mentioned there in the deed?

"A.—Yes sir, that check was given to Mr. Ramón Sotomayor and he would not take it, then he told him: 'You have to endorse it,' it was endorsed.

.       .       .       .       .       .       .       .       .       .

"Q.—Who told him: 'You have to endorse it?'

"A.—Mr. Fernando Jiménez.

"Q.—Mr. Fernando Jiménez himself?

"A.—Yes sir.

"Q.—What did Mr. Fernando Jiménez do with the check after it had been endorsed?

"A.—He delivered it to Mr. Juan Solá González who was present."

Public deeds are solemn, but not because that principle should be maintained must that which is not true be estabilshed as true. The rules of law invoked are just and tend to establish order, secure, credit and strength confidence, all needs for the proper development of the community, but those same rules harbour exceptions, whose scope has been settled by the courts, to allow things to be known, when it is necessary to stop those rules from working in an unjust manner. And this case is included in the exception.

Simulations should not be fostered. Truth is the right way. Experience teaches what a high price is paid for deviations from this straight road that expedites and secures all transactions, but often in good faith, out of a mistaken goodwill to relatives and friends, out of the wish to safeguard the interest of the weak or for other reasons more or less explicable within a field of action that is a certain way compatible with honesty and naked truth, simulated acts are performed, that should not be allowed to have oppressive results. The punishment should fit the crime and enough punishment is received in these cases with the uncertainty and trouble of a lawsuit. To condemn to a restitution that may be ruinous, of something which it is known has not been received, would be unjust. Therefore the exception, which of course, should arise from the pleadings and the proof clearly, strongly, fully, as it does in this case.

■ For that reason the fifth error assigned was not committed. As to the sixth, that the assessment of five hundred dollars as attorney's fees in addition to the costs in excessive, it seems to us that the appellants are right taking into account the concurrent facts and noting that the plaintiffs are the heirs—a widow and two minor children. We think three hundred dollars a reasonable award.

The judgment appealed from will be modified to that extent and so modified, affirmed.

Mr. Justice Travieso took no part in the decision of this case.